UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                             :

BONNIE C. BRENNAN,                :
                             :
                  Plaintiff,    :
                             :                  19-CV-7756 (VSB)
              - against -          :
                             :                **OPINION & ORDER**
                             :
LEGAL AID SOCIETY,          :
                             :
                  Defendant.  :
                             :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _11/23/2020_

Appearances:

Michael Patrick Hilferty
Maria Dinora Smith
White, Hilferty & Albanese P.C.
New York, NY
*Counsel for Plaintiff*

Douglas R. Jensen
Holly Tao
White & Case LLP
New York, NY
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

      Plaintiff Bonnie C. Brennan ("Brennan" or "Plaintiff") brings this suit against Defendant

the Legal Aid Society ("Defendant") alleging one cause of action for retaliation under Title VII

of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000d *et seq.*  Before me is

Defendant's motion to dismiss Plaintiff's First Amended Complaint ("FAC").  (Doc. 20.)

Because Plaintiff fails to plausibly allege the causation element of her retaliation claim, the

motion to dismiss is GRANTED.

I.     **Factual Background**[1]

Defendant is a provider of legal aid to indigent residents in New York.  (FAC ¶ 9.)

Brennan is a resident of the state of New York who began working for Defendant on September

10, 1990.  (*Id.* ¶¶ 8, 10.)  At the time her employment was terminated on May 11, 2018,

Plaintiff's title was Associate Appellate Counsel/Staff Attorney.  (*Id.* ¶ 10.)

On October 31, 2016, Plaintiff filed a complaint with the New York State Division of

Human Rights ("Division"), alleging discrimination based on her creed, race, and gender and

naming as individual respondents Attorney-in-Charge David Loftis and Deputy Attorney-in-

Charge Tina Luongo.  (*Id.* ¶ 11.)  The complaint was cross-filed with the Equal Employment

Opportunity Commission ("EEOC").  (*Id.* ¶ 11.)  Defendant submitted a response to the

complaint on March 24, 2017, and on June 7, 2017, the Division returned a finding of no

probable cause.  (*Id.* ¶ 12.)

On August 24, 2017, Brennan indicated to Defendant she would be out of the office

attending to a family emergency.  (*Id.* ¶ 13.)  Defendant approved her absence that same day,

characterizing the time as a nonemergency vacation request.  (*Id.*)  Brennan travelled to Florida

to defend the rights of a United States citizen who was an immigrant from the People's Republic

of China, with whom Brennan's family shared a decades-long relationship.  (*Id.*)  From August

24 until August 31, 2017, Plaintiff was out of the office.  Managing Attorney Cindy Wolpert sent

---

[1] The following facts are taken from the First Amended Complaint, (Doc. 17 ("FAC")).  I assume the factual allegations set forth in the First Amended Complaint to be true for purposes of this motion.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  My references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.  When extrinsic documents are presented on a motion to dismiss, the court may exclude the documents or convert the motion to a motion for summary judgment.  Fed. R. Civ. P. 12(d).  Although the parties have asked me to consider certain extrinsic evidence, for purposes of this motion I exclude and do not consider the extrinsic evidence presented by the parties; instead, I consider only the allegations in Plaintiff's complaint.  *See Chambers v. Time Warner, Inc*., 282 F.3d 147, 155 (2d Cir. 2002) ("[W]hen a district court considers certain extra-pleading materials and excludes others, it risks depriving the parties of a fair adjudication of the claims by examining an incomplete record.").

Brennan an email on August 30, 2017 about a Sex Offender Registration Act ("SORA") hearing for Brennan's client Albert Allie ("Allie") scheduled for August 31, 2017.  (*Id.* ¶ 14.)  Brennan "was out of the office, unable to attend the hearing, and did not receive this email until she returned from vacation."  (*Id.*)  The SORA hearing did not end up taking place on August 31, 2017, as the court adjourned the matter in Plaintiff's absence.  (*Id.* ¶ 14.)  On September 4, 2017, immediately upon returning to the office following Labor Day Weekend, Brennan called Allie's wife to apologize for her absence at the time of her husband's hearing, and made an appointment to meet with Mrs. Allie in person to arrange statements and interviews to move the case forward.  (*Id.* ¶ 16.)  Forty-five minutes later, Mrs. Allie called back and rejected Brennan's representation without providing an explanation.  (*Id.*)

Other Legal Aid attorneys besides Brennan exhibited deficiencies regarding missing filing deadlines or requesting hearing adjournments without being subjected to reprimand, suspension, or termination.  Moreover, Brennan had not been previously disciplined by Defendant.  (*Id.* ¶ 15.)  Additionally, Brennan had received no prior negative client reviews, and would have requested an adjournment of the SORA hearing anyway to further develop Allie's defense.  (*Id.* ¶ 18.)[2]  However, on September 12, 2017, Post-Conviction and Forensic Litigation Attorney-in-Charge David Loftis emailed Brennan requesting a meeting about Allie's case. Loftis informed Brennan she could have a union representative present if she wished.  Loftis demanded that Brennan return Allie's file, which she did.  (*Id.* ¶ 17.)

---

[2] Brennan alleges in conclusory fashion that her failure to appear at the SORA hearing "produced no negative effect on [] Allie's case.  Further, it produced no inconvenience for the Court or the People who had, in any case, convened to sentence [] Allie on August 31, 2017.  Moreover, because a SORA hearing only has to be held before a sex offender's release and [] Allie was only remanded to custody that day, the SORA hearing was not urgent."  (FAC ¶ 18.)  I do not find these conclusory, speculative allegations to be well-pled, and do not assume their truth for purposes of this motion.  *Lynch v. City of New York*, 952 F.3d 67, 78 (2d Cir. 2020) (stating that "conclusory and literally speculative" allegations do not qualify as well-pleaded factual allegations whose veracity the court should assume).

Loftis escalated the repercussions into a union hearing, and Luongo insisted without explanation that Brennan significantly reduce her contact with clients.  (*Id.*)  Defendant also claimed that Brennan made minimal efforts to prepare for the SORA hearing, but in preparation for the hearing Brennan obtained Allie's records from his criminal defense counsel, corresponded by email with Allie, and conducted lengthy conversations by telephone with Mr. and Mrs. Allie, and planned to compile a list of persons who would be willing to submit affidavits on Allie's behalf.  (*Id.* ¶ 19.)

On November 3, 2017, Plaintiff filed a complaint with the Division, alleging discrimination based upon retaliation and religious belief.  (*Id.* ¶ 20.)  The complaint was cross-filed with the EEOC.  (*Id.*)  On or about February 5, 2018, the Division processed Brennan's complaint, (*id.* ¶ 25), and on March 5, 2018, Defendant submitted a response, (*id.* ¶ 27).  On May 2, 2018, the Division "returned a finding of no probable case" regarding this complaint.  (*Id.* ¶ 28.)

On January 9, 2018, Plaintiff was discussing politics with an employee from another organization housed in the same building where Defendant has its offices (the "Building").  This discussion occurred outside of the Building on a public thoroughfare.  (*Id.* 22.)  Unbeknownst to Brennan, this conversation was reported to management of the Building who interpreted the discussion as a terrorist threat.  (*Id.*)  Consequently, Luongo and Loftis informed Brennan that she had to leave work immediately and advised her to work from home moving forward.  (*Id.* ¶ 23.)  For the following months, Brennan worked from home and was unable to go to the office to retrieve necessary materials to continue her work. (*Id.* ¶ 24.)  During this time, Plaintiff did not have full access to her Legal Aid email, was not forwarded her regular mail, and had limited access to client files.  (*Id.*)  Because of Defendant's actions, Brennan was unable to write a leave

letter to the Court of Appeals on behalf of one of her clients and was unable to attend an appellate argument in another case.  (*Id.*)

On March 1, 2018, Defendant provided Plaintiff a Notice of Termination of Employment.  (*Id.* ¶ 26.)  On May 11, 2018, after a union grievance process appealing the termination, Defendant terminated Brennan's employment.  (*Id.* ¶ 29.)

## II.   **Procedural History**

On September 11, 2018, Plaintiff filed charges of discrimination with the New York State Division of Human Rights, cross-filed with the EEOC.  Defendant submitted a response to this complaint on December 19, 2018.  On May 21, 2019, the EEOC issued a notice of right to sue letter after adopting the Division's no probable cause order.  (Tao Decl. Exh. J.)[3]

Plaintiff filed her Complaint on August 19, 2019.  (Doc. 1.)  Defendant filed a motion to dismiss the Complaint on November 6, 2019, (Docs. 11, 12, 13), which was mooted when Plaintiff filed the First Amended Complaint on December 5, 2019, (Docs. 17, 19).  On the same day, Plaintiff filed a notice of voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), voluntarily dismissing her retaliation claims under the New York State Human Rights Laws and New York City Human Rights Laws.  (Doc. 18.)  Defendant filed a motion to dismiss the First Amended Complaint on December 19, 2019, (Doc. 20), supported by a memorandum of law and declaration, (Docs. 21, 22).  On January 31, 2020, Plaintiff filed a memorandum of law in opposition, supported by a declaration and exhibits.  (Docs. 27, 28.)  This motion was fully briefed on February 21, 2020, when Defendant filed its reply memorandum of law supported by a declaration and exhibits.  (Docs. 31, 32.)

---

[3] "Tao Decl." refers to the Declaration of Holly Tao in support of Defendant's motion to dismiss.  (Doc. 22.)

### III.   <u>Legal Standard</u>

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This standard demands "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237.  "A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (internal quotations and citation omitted). A court "may also consider matters of which judicial notice may be taken" in ruling on a motion to dismiss.  *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).  A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions."  *Id.*

## IV.   Discussion

### A.   *Pleading Standards in Title VII Retaliation Cases*

The Second Circuit provided detailed guidance regarding the application of the above pleading standards to Title VII cases in *Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. 2015) and *Vega v. Hempstead Union Free School District*, 801 F.3d 72 (2d Cir. 2015). "Retaliation claims under Title VII . . . are [] analyzed pursuant to Title VII principles and the *McDonnell Douglas* burden-shifting evidentiary framework." *Littlejohn*, 795 F.3d at 315. "To establish a presumption of retaliation at the initial stage of a Title VII litigation, a plaintiff must present evidence that shows (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Id*. at 315–16 (internal citations and quotations omitted); *see also Vega*, 801 F.3d at 90 ("Thus, for a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that:  (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice.").  "As with [the] analysis of [a] disparate treatment claim, the allegations in the complaint need only give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation." *Littlejohn*, 795 F.3d at 316.

### B.   *Application*

Defendant argues that Plaintiff's First Amended Complaint fails to plausibly allege that her protected activity was the cause of the termination of her employment as required by Title VII's retaliation jurisprudence.  (Doc. 21, at 18.)[4]  Plaintiff argues that the temporal proximity

---

[4] Although Defendant also argues that Plaintiff had no good faith basis for her charges of discrimination, I do not reach this argument in light of my conclusion that Plaintiff's First Amended Complaint fails to adequately plead

between her October 31, 2016 and November 3, 2017 charges of discrimination with the Division—the purported protected activities—and Defendant's March 1, 2018 notice of termination of her employment establishes a plausible inference of causation.  (Doc. 27, at 9.)  Plaintiff is incorrect.

Unlike Title VII discrimination claims, retaliation claims under Title VII require a showing that the protected activity was a "but-for" cause of the adverse employment action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).  Thus, "[i]t is not enough that retaliation was a 'substantial' or 'motivating' factor in the employer's decision."  *Vega*, 801 F.3d at 90–91.  A plaintiff need not show that retaliation was the only cause of the employer's action; but, a plaintiff must show "that the adverse action would not have occurred in the absence of the retaliatory motive."  *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013); *see also Summa v. Hofstra Univ.*, 708 F.3d 115, 129 (2d Cir. 2013) ("[P]laintiff must show that retaliation was the determinative factor.").  "A causal connection in retaliation claims can be shown either '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'"  *Littlejohn*, 795 F.3d at 319 (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)); *see also Vega*, 801 F.3d 90 ("A retaliatory purpose can be shown indirectly by timing:  protected activity followed closely in time by adverse employment action." (citing *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001) ("The causal connection needed for proof of a retaliation claim can be

---

causation.  However, I note that Plaintiff's First Amended Complaint contains no factual allegations contextualizing the basis for her charges of discrimination or supporting an inference that Plaintiff was discriminated against because of her gender, race, religion, or otherwise.

established indirectly by showing that the protected activity was closely followed in time by the
adverse action." (internal quotation marks omitted))).  Furthermore, the Second Circuit has "not
drawn a bright line to define the outer limits beyond which a temporal relationship is too
attenuated to establish a causal relationship between the exercise of a federal constitutional right
and an allegedly retaliatory action."  *Summa*, 708 F.3d at 128 (internal quotation marks omitted);
*see also Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) ("Though this
Court has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits
beyond which a temporal relationship is too attenuated to establish causation, we have previously
held that five months is not too long to find the causal relationship.").  "This has allowed [courts]
to exercise [] judgment about the permissible inferences that can be drawn from temporal
proximity in the context of particular cases."  *Id.*  (quoting *Espinal v. Goord*, 558 F.3d 119, 129
(2d Cir. 2009) (comparing *Hollander v. American Cyanamid Co.*, 895 F.2d 80, 85–86 (2d Cir.
1990) (finding a lack of evidence that an adverse action, taken three months after the plaintiff's
EEOC complaint, was in response to the plaintiff's protected activity) *with Grant v. Bethlehem
Steel Corp.*, 622 F.2d 43, 45–46 (2d Cir. 1980) (finding that the lapse of eight months between
an EEOC complaint and retaliatory act indicated a causal connection))).

Plaintiff's First Amended Complaint contains no direct evidence of any retaliatory
animus against her, nor does Plaintiff present non-conclusory evidence of the disparate treatment
of fellow employees who engaged in similar conduct.[5]  Instead, Plaintiff relies on allegations

---

[5] With regard to allegations related to other employees, the First Amended Complaint does include the following
sentence:  "Other Legal Aid attorneys exhibited deficiencies regarding missing filing deadlines or requesting hearing
adjournments without being subjected to reprimand, suspension, or termination."  (FAC ¶ 15.)  I do not consider this
allegation.  First, this conclusory allegation is not well-pled with corresponding factual content.  Second, the
allegation that other Legal Aid employees missed filing deadlines or requested hearing adjournments is not
analogous to Plaintiff's wholesale failure to respond to her supervisor's email about an imminent SORA hearing, to
appear at a court-scheduled SORA hearing without notice, (*see* FAC ¶ 14), or to her making comments outside
Defendant's building that were interpreted by building management as a terrorist threat, (*see id.* ¶ 22).

suggesting that her protected activity in filing charges of discrimination was followed closely by the termination of her employment.  With respect to Plaintiff's October 31, 2016, charge of discrimination, the sixteen-month gap between this charge and the termination of Plaintiff's employment constitutes incredibly weak evidence of causation.  *See Woodworth v. Shinseki*, 447 F. App'x 255, 258 (2d Cir. 2011) (eighteen-month gap "too temporally removed to support [] inference" of retaliation); *Elgalad v. N.Y.C. Dep't of Educ.*, No. 17-CV-4849 (VSB), 2018 WL 4572237, at *9 n.9 (S.D.N.Y. Sept. 24, 2018) (alleged retaliatory "events occurred between one and two years after Plaintiff filed his [Office of Equal Opportunity] complaint and are not temporally proximate enough to create an inference of causation").

With respect to her November 3, 2017 charge of discrimination, although Plaintiff pleads the requisite temporal proximity to raise an inference of causation, that inference is defeated by the intervening events taking place between Plaintiff's protected activity and the termination of her employment.  On January 9, 2018, Plaintiff made statements during a conversation with an employee from another organization housed in the same building as Defendant, which was reported to the building management who interpreted the conversation as a terrorist threat.  (FAC ¶ 22.)  Accordingly, Plaintiff was told that she needed to leave work immediately and was required to work from home, where she was unable to complete her work.  (*Id.* ¶ 24.)  During this time, Plaintiff was unable to write a leave letter to the Court of Appeals on behalf of one of her clients and was unable to attend an appellate argument in another case.  (*Id.*)  Plaintiff continued to work from home at least until Plaintiff received her notice of termination on March 1, 2018, and Plaintiff's employment was not ultimately terminated until May 11, 2018, after a union grievance process.  (*Id.* ¶ 29.)  These intervening events "defeat the inference of causation where temporal proximity might otherwise suffice to raise the inference." *Soto v. Marist Coll.*,

No. 17-CV-7976 (KMK), 2019 WL 2371713, at *11 (S.D.N.Y. June 5, 2019) (finding Plaintiff's

absence from work, which required appointment of substitute professors, to constitute an

intervening event that undermined inference of causation (citing *Jeanty v. Newburgh Beacon Bus

Corp.*, No. 17-CV-9175 (CS), 2018 WL 6047832, at *9 (S.D.N.Y. Nov. 19, 2018))); *see also

Dortch v. N.Y.C. Dep't of Educ.*, No. 14-CV-2534 (NGG)(PK), 2016 WL 2621076, at *9

(E.D.N.Y. Mar. 23, 2016) (dismissing retaliation claim because the collection of "anonymous

complaints against [the plaintiff's] . . . unprofessional behavior" was an intervening event that

prevented the plaintiff from establishing causation); *Rivera v. Thurston Foods, Inc.*, 933 F. Supp.

2d 330, 342 (D. Conn. 2013) (finding an intervening incident that "alone gave [the] [d]efendant

grounds to terminate [the] [p]laintiff" defeated the plaintiff's retaliation claim); *Joseph v. Marco

Polo Network, Inc.*, No. 09 Civ. 1597 (DLC), 2010 WL 4513298, at *18 (S.D.N.Y. Nov. 10,

2010) (holding the plaintiff could not establish causation where there was "[e]vidence of

significant misconduct" that occurred "after the employee's protected activity" (citation

omitted)); *Yarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005) ("In this

Circuit, an inference of causation is defeated . . . if there was an intervening causal event that

occurred between the protected activity and the allegedly retaliatory discharge.").  Therefore, I

conclude that Plaintiff's First Amended Complaint fails to plausibly allege a causal connection

between the protected activity and the adverse employment action, and thus Plaintiff has failed to

give plausible support to the reduced prima facie requirements when pleading Title VII

retaliation.

## V.    <u>**Conclusion**</u>

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.  The Clerk of court is directed to terminate the open motion at Document 20, and to close this case.

SO ORDERED.

Dated: November 23, 2020
      New York, New York

Vernon S. Broderick
United States District Judge